IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

REBECCA MICHELLE SHERMAN,

Petitioner,

v.

NANCY HOWTON,

Respondent.

Civil No. 3:09-cv-00228-AC

FINDINGS AND RECOMMENDATION

C. RENEE MANES
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR  97204

Attorneys for Petitioner

JOHN R. KROGER
Attorney General
KRISTEN E. BOYD
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301

Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Coffee Creek Correctional Facility, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus should be DENIED.

## BACKGROUND

On January 8, 2002, a Wasco County grand jury issued a Superseding Indictment charging Petitioner with one count of Manslaughter in the First Degree, four counts of Criminal Mistreatment in the First Degree, and one count of Criminal Nonsupport. The charges arose from a pattern of abuse perpetrated by Petitioner's boyfriend against Petitioner's five-year old son. Petitioner's son died from internal injuries inflicted by Petitioner's boyfriend, who pleaded guilty to the murder. The state's theory of Petitioner' s involvement in her son's death was that she knew her son needed medical care for serious injuries in the months preceding his death but failed to obtain it for him.

The case was tried to a jury. At the close of evidence, the trial judge granted Petitioner's motion for a judgment of acquittal on one count of Criminal Mistreatment. The jury then entered a verdict acquitting Petitioner on one of the other Criminal Mistreatment counts. The jury found Petitioner guilty of all remaining charges.

Petitioner filed a direct appeal. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Sherman*, 194 Or. App. 328, 95 P.3d 756, *rev. denied*, 337 Or. 555, 101 P.3d 809 (2004).

2 - FINDINGS AND RECOMMENDATION -

Petitioner then sought state post-conviction relief ("PCR"). Following an evidentiary hearing, the PCR trial judge denied relief. Petitioner appealed, but again the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. *Sherman v. Hoefel*, 222 Or. App. 605, 195 P.3d 923, *rev. denied*, 345 Or. 417, 198 P.3d 941 (2008).

On February 24, 2009, Petitioner filed a pro se Petition for Writ of Habeas Corpus in this court alleging the following claims for relief:

> **Ground One:** The trial court erred by denying [Petitioner's] Motion for Access to Jury Lists and Other Jury Records.
> **Supporting Facts:** [Petitioner] has a right on her own behalf and on the behalf of prospective Wasco County jurors to examine jury lists to determine whether the method for selection of jurors comports with the requirements of law under the state and federal constitution.
>
> **Ground Two:** The trial court erred in denying [Petitioner's] motion to declare Ballot Measure 11 unconstitutional on its face and to impose sentence under the Sentencing Guidelines.
> **Supporting Facts:** Petitioner's position is that the Oregon Supreme Court wrongly decided *Huddleston v. Sawyer*, 324 Or 597, 932 P2d 1145, cert den 522 US 994 (1997). Various cases of a more recent vintage demonstrate that even federal courts have jurisdiction over Guarantee Clause claims such as petitioner's. *New York v. United States*, 505 US 144, 112 S Ct 2408, 120 L Ed 2d (1992). The Ballot Measure 11 (ORS 137.700) sentence in the circumstances of this case is unconstitutional as applied to petitioner pursuant to Article I, § 16 of the Oregon Constitution and as applied to petitioner pursuant to the Eighth Amendment to the Constitution of the United States. In this instance, the imposition of Ballot Measure 11 (ORS 137.700) would constitute a cruel and unusual punishment. In *State ex rel Huddleston v. Sawyer*, 324 Or 597, 932 P2d 1145, *cert den sub nom Sawyer v. Oregon ex rel Huddleston*, 524 US 994 (1997), the court makes clear that Measure 11 does not require imposition of a mandatory minimum term if its application would constitute cruel and unusual punishment under the state constitution. 324 Or at 600-08; 612 (explaining that one reason for rejecting claim that Measure 11 eviscerates state constitutional right of allocution is that "[ during allocution a defendant may argue that the mandatory minimum. As applied to the particular crime, would be unconstitutionally cruel and unusual or disproportionate"). Thus, Measure 11 requires imposition of a minimum sentence in [Petitioner's] case only if the minimum term is not unconstitutional as applied. Petitioner's position is that

3 - FINDINGS AND RECOMMENDATION -

the Oregon Supreme Court wrongly decided *Sawyer*. To preserve the claims for federal habeas corpus purposes, petitioner renewed them on appeal. See *O'Sullivan v. Boerckel*, 119 S Ct 1728, 144 L Ed 2d 1 (1999) (to preserve claims for federal habeas corpus review, criminal defendant must avail himself of discretionary level of state direct appeal).

**Ground Three:** The trial court erred in denying [Petitioner's] motion to hold Ballot Measure 11 unconstitutional as applied to her pursuant to Article I, Section 16 of the Oregon Constitution.
**Supporting Facts:** Combined issue; See Ground Two.

**Ground Four:** The trial court erred in denying [Petitioner's] motion to hold Ballot Measure unconstitutional as applied to her pursuant to the Eighth Amendment of the United States Constitution.
**Supporting Facts:** Combined issue; See Ground Two.

**Ground Five:** Petitioner was denied adequate assistance of counsel under Article 1, § 11 of the Oregon Constitution and under the Sixth and Fourteenth Amendments to the Constitution of the United States.
**Supporting Facts:** Defense counsel failed to provide legal advice and services which met the minimum standards required of a criminal defense attorney. The failure to give adequate representation includes, but is not limited to, the following specific allegations:

1.    Defense counsel did not fully and adequately investigate and prepare petitioner's case in that he did not fully investigate the case and locate witnesses whose names were provided by petitioner.

2.    Defense counsel failed to subpoena the written notes of witness Officer Lori Rosebraugh which notes contained an interview of petitioner, the victim and the victim's murderer, Mr. Walker which statements were critical to the defense.

3.    Defense counsel failed to call character witnesses in petitioner's trial who would have testified on behalf of petitioner and whose names petitioner provided to defense counsel.

4.    Defense counsel did not advise petitioner that her choice as to whether to testify or not was totally up to her.

5.    Defense counsel did not raise the issue of the Attorney General's Office conflict of interest in representing the State in petitioner's trial while at the same time defending a suit brought by [the victim's] biological father.

6.    Defense counsel failed to excuse jurors who petitioner informed him that she wanted excused, namely juror Washington in that she had worked with juror Washington's son; and that another juror who

4 - FINDINGS AND RECOMMENDATION -

name is not recalled at this time, but was a casual acquaintance of petitioner in that he picked up his child at the same bus stop where [petitioner] picked up her child;

7.   Defense counsel failed to call several witnesses who would have testified to petitioner's gullibility and naivete, who were listed as defense witnesses but were never called to testify at trial;

8.   Defense counsel did not elicit from defense witness Dr. Linda Grounds relevant testimony regarding [petitioner's] metal [sic] state and thoughts, feelings and beliefs.

**Ground Six:** Trial court violated petitioner's due process of law and right to a fair trial.

**Supporting Facts:**

1.   The court erred in denying petitioner's Motion for Access to Jury Lists and other jury records;

2.   The trial court erred in not allowing Dr. Grounds to testify to [petitioner's] thoughts, feelings and emotions;

3.   The court erred in denying the petitioner's motion for a continuance so that a writ of mandamus could be filed immediately with the Oregon Supreme Court.

**Ground Seven:**  The Post Conviction court errored [sic] when it found that petitioner was not denied her rights in the underlying criminal proceeding and denied her claim for post-conviction relief.

\* \* \*[1]

**Ground Eight:**  Petitioner was denied adequate assistance of appellate counsel under Article 1, § 11 of the Oregon Constitution and under the Sixth and Fourteenth Amendments to the Constitution of the United States.

**Supporting Facts:**  Appellate counsel failed to provide legal advice and services which met the minimum standards required of a criminal defense attorney.  The failure to give adequate representation includes, but is not limited to, the following specific allegations:

1.   Prior to the dismissal of the Post Conviction, Appellate counsel did not fully and adequately investigate and prepare petitioner's case in that he did not

---

[1] The Petition includes a lengthy discussion of alleged errors committed by the PCR trial judge.  Because they are not pertinent to Petitioner's federal habeas corpus claims as noted below, they are omitted for the sake of brevity.

fully investigate the case to find the points raised below were meritorious in this instance:

(a)     The trial court erred in denying [petitioner's] motion to declare Ballot Measure 11 unconstitutional on its face and to impose sentence under the Sentencing Guidelines.

(b)     The trial court erred in denying [petitioner's ] motion to hold Ballot Measure 11 unconstitutional as applied to her pursuant to Article 1, Section 16 of the Oregon Constitution.

(c)     The trial court erred in denying defendant's motion to hold Ballot Measure 11 unconstitutional as applied to her pursuant to the Eighth Amendment of the United States Constitution.

This Court appointed counsel to represent Petitioner. In her Brief in Support of Petition and Reply to Answer and Response, Petitioner presents argument on five of her claims -- Grounds One, Two, Three, and Four, and claims 1, 3, and 7 from Ground Five. As to the remaining claims, counsel does not address them, but states Petitioner "preserves those claims by incorporating the arguments in her petition."

Respondent argues Petitioner is not entitled to relief on the claims not addressed in her Brief in Support because her failure to address them amounts to a waiver. Respondent further contends Petitioner procedurally defaulted the claims alleged in Ground Five, claims 2, 4-6, and 8, Ground Six, Ground Seven, and Ground Eight. With respect to the remaining claims in Ground One, Ground Two, Ground Three, Ground Four, and Ground Five, claims 1, 3, and 7, Respondent argues the Oregon state court decisions denying relief were not contrary to or an unreasonable application of federal law, and Petitioner is not entitled to relief on the merits.

6 - FINDINGS AND RECOMMENDATION -

## DISCUSSION

### I.   Claims Not Addressed in Brief in Support

As noted, in her Brief in Support of Petition, Petitioner does not address the allegations contained in claims 2, 4, 5, 6, and 8 of Ground Five or those contained in Grounds Six, Seven, and Eight. Upon review of the unaddressed claims, however, Petitioner is not entitled to relief on the grounds alleged in the Petition but not addressed in the Memorandum in Support. *See* 28 U.S.C. § 2248 ("[the allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.")

The claims alleged in Ground Seven challenging the rulings of the PCR trial judge are not cognizable in a federal habeas corpus proceeding. The instances of ineffective assistance of trial counsel alleged in claims 2, 4, 5, 6, and 8 of Ground Five were never presented to the Oregon appellate courts for review and are, as a consequence, procedurally defaulted. Likewise, the claims alleged in Ground Six. As to the claims alleged in Ground Eight, they were not presented to the state court at either the PCR trial or appellate level. Accordingly, Petitioner is not entitled to habeas corpus relief on the claims not addressed in her Brief in Support.

### II.   Remaining Claims

#### A.   Legal Standards

An application for a writ of habeas corpus shall not be granted unless the adjudication on the merits in State court was:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or 2) resulted

7 - FINDINGS AND RECOMMENDATION -

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362, 386-389 (2000), the Supreme Court construed this provision as requiring federal habeas courts to be highly deferential to the state court decisions under review. In *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-1402 (2011), the Court reiterated the highly deferential nature of federal habeas review, and limited federal review "to the record that was before the state court that adjudicated the claim on the merits."

"'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004). An "unreasonable application" of clearly established federal law occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lambert*, 393 F.3d at 974 (citing *Williams*). "The state court's application of law must be objectively unreasonable." *Williams*, 529 U.S. at 411. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24, 25 (2002) (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

In reviewing a state court decision, "a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court

8 - FINDINGS AND RECOMMENDATION -

was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.

2004). This is a standard that will be met in few cases. *Id*. at 1000. When unchallenged, State

court determinations of factual issues "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1);

*Miller-el v. Cockrell*, 537 U.S. 322, 340 (2003). A Petitioner may rebut the presumption of

correctness with clear and convincing evidence. *Id*. The last reasoned decision by the state court

is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

*Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002).

**B.      Analysis**

**1.      Ground One - Trial Court Error in Denying Access to Jury Lists**

In Ground One, Petitioner alleges the trial judge violated her rights by denying a motion to

access jury records to determine whether the jury selection methods in Wasco County comported

with state and federal constitutional provisions. Petitioner argues before this Court that significant

minorities are or were systematically excluded jury service in Wasco County.

Prior to the criminal trial, Petitioner's attorney issued subpoenas in an attempt to obtain

information pertaining to Wasco County jury impanelment and selection procedures. At a hearing

on the State's motion to quash the subpoenas, the parties presented substantial testimony and

evidence. After hearing argument and testimony on the matter, the trial judge concluded Petitioner

failed to establish the material she sought was likely relevant to any challenge to the jury-selection

process. The judge concluded:

> THE COURT: So, the law requires that there be a showing that the information
> sought is material, relevant (inaudible). And I think you have to show by outside
> means something, that there's some kind of systematic misfeasance, malfeasance,
> at least a hint of chicanery in order to get past the threshold to say, hey, no go. And

there just isn't anything here that suggests that in Wasco County.  So I am going to deny the [Petitioner's] motion for the jury lists.

Tr., p. 894.

Petitioner did not and does not directly challenge the actual composition of the venire panel in Wasco County.[2]  Instead, Petitioner challenges the trial court's denial of access to the Wasco County jury records.  Petitioner does not provide, and the Court could not locate, any Supreme Court precedent declaring a criminal defendant has a constitutional right to access to such records. To the contrary, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* [v. Maryland], 373 U.S. 83 (1963)] did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

Petitioner's reliance on *Berghuis v. Smith*, 130 S. Ct. 1382 (2010) is misplaced.  In *Berghuis*, the Supreme Court considered and rejected a direct fair cross-section challenge.  While *Berghuis* did rely upon the type of statistical analysis Petitioner sought to perform in this case, nowhere does the Supreme Court state a criminal defendant has the right to discover jury records in a quest to validate a fair cross-section claim.

Because no clearly established federal law supports Petitioner's claim that the trial court violated her rights by refusing access to the Wasco County jury records, the Oregon court decisions

---

[2]The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury drawn from sources reflecting a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522 (1975).  To establish a prima facie violation of the fair cross-section requirement, a petitioner must show that (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this under-representation is due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

denying such access are entitled to deference.  Petitioner is not entitled to habeas corpus relief on the claim alleged in Ground One.

### 2. Grounds Two, Three, and Four - Measure 11 Sentence

In Grounds Two through Four, Petitioner challenges the constitutionality of the Measure 11 sentence imposed against her for Manslaughter.  Petitioner argues the Measure 11 sentence is unconstitutional on its face and as applied to her, on the basis that it violates her right to be free from cruel and unusual punishment under the Eighth Amendment.

No clearly established federal law as determined by the U.S. Supreme Court would indicate that application of Measure 11 mandatory minimum sentences to Petitioner violated her right to be free from cruel and unusual punishment.  To the contrary, the Supreme Court has consistently upheld mandatory minimum sentences in noncapital cases.  *See Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) ("[t]here can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory'"); *Ewing v. California*, 538 U.S. 11, 29-30 (2003) (upholding California's "three-strikes rule"); *see also Alvarado v. Hill*, 252 F.3d 1066 (9th Cir. 2001) (upholding application of Measure 11 mandatory minimum sentence to a juvenile).

Thus, the Oregon courts' denial of Petitioner's claim that her Measure 11 sentence violated her right to be free from cruel and unusual punishment was not contrary to or an unreasonable application of clearly established federal law.  Accordingly, Petitioner is not entitled to habeas corpus relief on this claim.

### 3.    Ground Five - Ineffective Assistance of Trial Counsel

Petitioner alleges trial counsel provided constitutionally ineffective assistance of counsel in three respects: (1) counsel failed to fully and adequately investigate Petitioner's case and locate witnesses whose names were provided by Petitioner; (2) counsel failed to call character witnesses who would have testified on Petitioner's behalf and whose names were provided to counsel by Petitioner; and (3) counsel failed to call several witnesses who would have testified to Petitioner's gullibility and naivete.

The clearly established federal law governing claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). *Pinholster*, 131 S. Ct. at 1403. Under *Strickland*, a petitioner must prove that: 1) counsel's performance fell below an objective standard of reasonableness and, 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams*, 529 U.S. at 390-91; *Strickland*, 466 U.S. at 687-88.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. "Judicial scrutiny of counsel's performance must be highly deferential," *id*. at 689, and "a court must indulge [the] strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment." *Pinholster*, 131 S. ct. at 1407 (quoting *Strickland*) (internal quotation marks omitted).

To prove a deficient performance of counsel, a petitioner must demonstrate that trial counsel "made errors that a reasonably competent attorney as a diligent and conscientious advocate would

12 - FINDINGS AND RECOMMENDATION -

not have made." *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985).  The test is whether the

assistance was reasonably effective under the circumstances, and judicial scrutiny must be highly

deferential, with the court indulging a presumption that the attorney's conduct falls within the wide

range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689.

To establish the second prong of the *Strickland* test, "[t)he defendant must show that there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Id*. at 694.  In determining whether a defendant was prejudiced by

ineffective assistance of counsel, the court should examine whether the "'result of the proceeding

was fundamentally unfair or unreliable.'"  *United States v. Palomba*, 31 F.3d 1456, 1460-61 (9th

Cir. 1994) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993)).

Petitioner presented her ineffective assistance of counsel claims to the PCR trial court.

After conducting an evidentiary hearing, the PCR judge denied relief and entered the following

pertinent findings of fact and conclusions of law:

### FINDINGS OF FACT

1.      Either trial counsel or his investigator interviewed all of the potential
        witnesses whose names were given to trial counsel by petitioner.

2.      Trial counsel made the tactical decision not to call character witnesses.

3.      Petitioner has not presented any information concerning her defense that
        counsel would have found upon further investigation.

* * *

6.      Dr. Grounds testified at trial that petitioner was naive and that such naivete
        would make a person "more vulnerable to charisma, to manipulation."

13 - FINDINGS AND RECOMMENDATION -

7.    Trial counsel's decision not to call lay persons to testify concerning petitioner's naivete and gullibility was in part due to his concerns that those witnesses would be impeached by specific instances of conduct of . . . petitioner's boyfriend.

8.    The prosecution stated in a trial memorandum that it anticipated cross-examination into petitioner's past knowledge of [her boyfriend's] violent conduct toward others, including the victim.

* * *

## CONCLUSIONS OF LAW

1.    Based on the findings of fact set forth above, in the underlying criminal proceedings resulting in petitioner's conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution and as articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), or the Constitution of the United States.

* * *

3.    Petitioner did not prove any of her claims by a preponderance of the evidence.

4.    Petitioner did not prove the facts underlying of [her] post-conviction claims by a preponderance of evidence. Thus petitioner has not shown, as required by *Strickland*, (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's allegedly unprofessional errors, the result of the proceedings would have been different. . . .

Resp. Exh. 125, pp. 3-5.

Petitioner contends she provided trial counsel the names of two character witnesses who would have testified she was a good mother and that she was also naive and gullible and the type of woman who would have believed her boyfriend's denials of any problems with her son. She argues the PCR trial judge's conclusion that trial counsel did not call the witnesses because they

might be impeached regarding whether Petitioner know of specific violent behavior by her boyfriend was unreasonable in light of the evidence before the court, and not entitled to deference under 28 U.S.C. § 2254(d)(2).

Trial counsel did testify that the primary reason he did not call the witnesses was because he believed they had been excluded by the trial court or their testimony was not properly admissible. He also testified, however, that "[t]here was a motion of -- there was some concerns about being impeached by specific instances of [the boyfriend's] conduct." Resp. Exh. 119, p. 32. The PCR trial judge's findings were consistent with this evidence.

The PCR trial judge's conclusion that counsel did not provide constitutionally ineffective assistance of counsel was not contrary to or an unreasonable application of *Strickland*. Accordingly, Petitioner is not entitled to habeas corpus relief on her claims of ineffective assistance of trial counsel alleged in Ground Five.

## RECOMMENDATION

For these reasons, the Petition for Writ of Habeas Corpus [2] should be DENIED, and a judgment of dismissal should be entered. Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should also be DENIED.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due April 6, 2012. If no objections are filed, review of the Findings and Recommendation will go under advisement that date. A party may respond to another party''s objections within 14 days after the objections are filed. If objections are filed, review of the

15 - FINDINGS AND RECOMMENDATION -

Findings and Recommendation will go under advisement upon receipt of the response, or on the

latest date for filing a response.

DATED this 22nd day of March, 2012.

John V. Acosta
United States Magistrate Judge

F:\Share\Acosta\09-228sherman0322f&r.wpd